IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In the Matter of: | ) | Case No. BK26-40604 |
| | ) | |
| ALEXANDER MITCHELL | ) | |
| POLLMANN and | ) | Chapter 11 Subchapter V |
| SYDNEY C. POLLMANN, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

**Order Granting Motion for Relief from Stay**

THIS MATTER is before the court on the motion for relief from stay filed by Commercial Capital Company, LLC, and the debtors' objection. James C. Bocott appeared for the debtors Alexander Pollmann and Sydney Pollmann. Michael D. Samuelson appeared for Commercial Capital. The motion for relief is granted because the debtors do not own the equipment and the automatic stay does not reach it. And even if the debtors' possession and use of the equipment were an interest of the estate, cause exists for relief because there is no evidence the equipment is insured. And, importantly, no one is paying for it. The debtors' request for an extension of the stay is denied, and the fourteen-day stay is waived.

**Findings of Fact**

The debtors run a custom harvesting and grain-hauling business.[1] They also own Pollmann Farms, LLC. Over eight months in 2024, Pollmann Farms entered into three transactions with Commercial Capital. On March 20, 2024, it leased a 2014 Orthman 1210 Chief grain cart for twelve quarterly payments of $3,523.[2] On October 18, 2024, it financed a 2001 International

---

[1] Doc. #50, Pg. 13–14; Doc. #70, ¶ 1. The debtors' proposed Subchapter V plan describes the debtors' business as operating "via Pollmann Custom Farming, LLC," a second entity the debtors own. Doc. #50, Pg. 13. Their Schedule A/B lists both companies with a single ownership figure of 100% and a value of $0.00. Doc. #20, Pg. 5. The record does not show how the debtors divide ownership of either entity, or which entity uses the equipment.

[2] Doc. #67-3. The lease lists its vendor as "Sale Leaseback" and states a purchase option of "$1.00." But its end-of-term paragraph describes a purchase at fair market value. Doc. #67-3. A non-cancellable lease with a nominal purchase option creates a

truck and a 2001 Kuhn Knight 3050 feed mixer for $25,000.[3] On November 12, 2024, it financed a 2011 Geringhoff corn head for $29,000, with $2,900 down and twelve quarterly payments of $2,778.[4]

Each agreement names “Pollmann Farms, LLC” as borrower or lessee. Alexander signed each one on the LLC’s signature line and listed his title as “Owner.”[5] The finance agreements provide: “The undersigned person warrants on behalf of the Borrower that he/she is duly authorized to sign and bind the Borrower.”[6] Below the LLC’s signature block, each document contains a separate personal guaranty. Alexander signed each guaranty “Individually.”[7] Sydney did not sign any of the documents.

The agreements cross-collateralize the LLC’s obligations.[8] Commercial Capital filed financing statements with the Nebraska Secretary of State on March 21, 2024, October 23, 2024, and November 27, 2024.[9] The financing statements name the LLC as debtor.

The LLC defaulted on all three agreements, and Alexander has not paid on his guaranties. On May 27, 2026, the LLC filed a Chapter 7 case, Case No. BK26-40606. On September 14, 2026, Commercial Capital obtained relief from the stay in the LLC’s case for this very equipment.[10] The Chapter 7 trustee abandoned the LLC’s property.

The debtors filed this Subchapter V case the same day the LLC filed its case, May 27, 2026. The debtors’ filings disagree regarding the equipment. Schedule A/B lists the grain cart and corn head as business equipment the

---

security interest, not a true lease. Neb. U.C.C. § 1-203(b)(4); Kan. Stat. Ann. § 84-1-203 (the lease selects Kansas law). The distinction does not matter. Either Commercial Capital owns the grain cart, or the LLC owns it subject to Commercial Capital’s security interest. Under neither view do the debtors own it.

[3] Doc. #67-1.

[4] Doc. #67-2.

[5] Doc. #67-1, Pg. 1; Doc. #67-2, Pg. 1; Doc. #67-3.

[6] Doc. #67-1, Pg. 2.

[7] Doc. #67-1, Pg. 1; Doc. #67-2, Pg. 1; Doc. #67-3.

[8] Doc. #67-1, Pg. 3; Doc. #67-3.

[9] Doc. #67-4; Doc. #67-5; Doc. #67-6.

[10] Doc. #58, ¶ 38; Doc. #67, ¶ 39; Case No. BK26-40606, Doc. #26.

debtors own, worth $50,000.[11] Schedule G lists no lease with Commercial Capital.[12] The debtors' proposed plan, by contrast, says the debtors "lease" the corn head and grain cart and excludes them from the liquidation analysis as "leased property."[13] The plan treats Commercial Capital as holding liens on the debtors' property, proposes quarterly payments of $2,778 for the corn head and $3,523 for the grain cart, and provides for assumption of the debtors' "leases with Commercial Capital Company."[14] It also states the International truck and feed mixer "have been surrendered."[15]

Commercial Capital filed its motion for relief on September 25, 2026. It asks for relief from the stay or, alternatively, a determination the stay does not apply. It requests waiver of the fourteen-day stay under Federal Rule of Bankruptcy Procedure 4001(a)(4).[16] The debtors object only to relief on the corn head and grain cart.[17]

The debtors have the equipment and use it in their harvest operation.[18] They contend they "effectively own" the equipment as owners of the LLC, need it for fall harvest, and provided for the debt in their plan.[19] In his affidavit, Alexander states he "never signed as simply an officer of the LLC or an authorized party."[20] But his affidavit exhibits show him signing on the LLC's line as "Owner."[21] The affidavit adds one twist: "the LLC will simply sell the equipment to the Debtors subject to the lien and debt."[22] No sale has occurred.

---

[11] Doc. #20, Pg. 7.

[12] Doc. #20, Pg. 16.

[13] Doc. #50, Pg. 9–10.

[14] Doc. #50, Pg. 12, 15.

[15] Doc. #50, Pg. 12.

[16] Doc. #58, Pg. 7.

[17] Doc. #66, Pg. 2.

[18] Doc. #50, Pg. 14; Doc. #67, ¶ 37; Doc. #70, ¶¶ 2, 8.

[19] Doc. #66, ¶¶ 2–10; Doc. #70, ¶¶ 1–10.

[20] Doc. #70, ¶ 5.

[21] Doc. #70, Pg. 3, 6.

[22] Doc. #70, ¶ 11. A postpetition acquisition might bring the equipment into this estate under 11 U.S.C. § 541(a)(7), or under § 1186(a) if a plan is confirmed under

On the petition date, the LLC owed $32,510.20 on the feed mixer agreement, $38,197.80 on the corn head, and $26,774.80 on the grain cart.[23] Relying on online pricing services, Commercial Capital values the feed mixer at $12,000, the corn head at $23,000, and the grain cart at $30,000.[24] The debtors' schedules list a $61,000 debt against $50,000 in value for the corn head and grain cart.[25] The last known insurance on the equipment expired July 15, 2026.[26] The debtors offered no evidence of insurance since then and no evidence of a postpetition payment.

## Conclusions of Law

### *The Equipment Is Not Property of the Debtors' Estate*

The automatic stay bars acts against the debtor, property of the debtor, and property of the estate. 11 U.S.C. § 362(a). Its in rem provisions bar "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." *Id.* § 362(a)(3). The estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* § 541(a)(1). The definition is broad. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204–05 (1983).

As a general matter, state law defines the debtor's property interest, "[u]nless some federal interest requires a different result." *Butner v. United States*, 440 U.S. 48, 55 (1979). Under Nebraska law, "[a] limited liability company is an entity distinct from its members." Neb. Rev. Stat. § 21-104(a); *see Perkins, L.L.C. v. RMR Bldg. Grp., LLC*, 30 N.W.3d 148, 159 (Neb. 2026). Its debts are "solely the debts, obligations, or other liabilities of the company." Neb. Rev. Stat. § 21-129(a).

Owning membership interests in an entity does not make the entity's property the interest holder's property. *See, e.g., Hawley v. Skradski*, 935

---

§ 1191(b). The after-acquired property provisions of § 1115 do not apply in Subchapter V. 11 U.S.C. § 1181(a). An assumption of the LLC's debt or a use of estate property as proposed may require notice and a hearing under §§ 363(b)(1) and 364(b).

[23] Doc. #67, ¶¶ 8–31.

[24] Doc. #67, ¶¶ 37–38.

[25] Doc. #20, Pg. 13. Schedule D reports the Commercial Capital debt as owed by "Debtor 1 and Debtor 2 only."

[26] Doc. #67, ¶ 40.

N.W.2d 212, 218 (Neb. 2019) ("And even where one person owns all the stock of a corporation, property belonging to the corporation does not become the property of such person."). The same rule holds in bankruptcy. The membership interest comes into the estate. The entity's assets do not.

> [A]lthough the debtor's interest in a corporation becomes property of the estate when a bankruptcy petition is filed, the corporation's property does not thereby become property of the shareholder's estate.

*In re Brittain*, 435 B.R. 318, 322 (Bankr. D.S.C. 2010) (quoting *In re Moore*, 410 B.R. 439, 442 (Bankr. E.D. Va. 2009)). *Brittain* applied the rule where the sole members of an LLC had guaranteed the LLC's equipment loan. *Id.* at 320–22.[27]

A separate entity remains separate even when the debtor formed and controls it. *See Nat'l Bank of Ark. v. Panther Mountain Land Dev., LLC* (*In re Panther Mountain Land Dev., LLC)*, 686 F.3d 916 (8th Cir. 2012). In *Panther Mountain*, improvement districts closely tied to the debtor were "separate legal entities" and "not property of the estate." *Id.* at 922-23; *see also Fowler v. Shadel*, 400 F.3d 1016, 1019 (7th Cir. 2005) (holding vehicles titled in a corporation were not property of the sole shareholder's estate); *In re Julien,* 2012 WL 314349, at *2 (Bankr. D. Neb. Feb. 1, 2012) (noting estate's interest in a wholly owned company's assets reaches only what remains after the company's creditors are paid).

The debtors own the LLC. Their estate holds the membership interest, which they valued at $0.00. It does not hold the LLC's corn head or grain cart. In their objection, the debtors contend owners of an LLC "own everything that is owned by the entity." The debtors cite no authority for the position, and Nebraska law is to the contrary.[28]

---

[27] One Eighth Circuit bankruptcy court applied the same principle where two commonly owned companies were "operated and managed as a unit." *In re Seven Rivers Leasing Corp.*, 669 B.R. 810, 813 (Bankr. W.D. Ark. 2025). There, one company's hangar was not property of the other company's estate, and the court granted the creditor relief. *Id.* at 814. The court noted the creditor still needed relief in the owning company's own case. *Id.* Commercial Capital has it.

[28] The debtors' bankruptcy schedules also do not change the analysis. Line 19 of Schedule A/B requires a debtor list any interest in an LLC. It does not require listing the LLC's separate property. Listing the equipment on line 40 did not give the debtors title.

*Alexander's Signature as "Owner" Describes His Authority Over the LLC*

The debtors argue Alexander signed the agreements as "Owner" rather than as an officer, making the equipment his. The documents say otherwise. Alexander signed the line reserved for Pollmann Farms, LLC, and warranted his authority. A "longstanding tenet of the law is that if a contract is made with a known agent acting within the scope of his or her authority for a disclosed principal, the contract is that of the principal only." *Shaul v. Brenner*, 637 N.W.2d 362, 368 (Neb. Ct. App. 2001) (citing *Coffey v. Mann*, 585 N.W.2d 518, 523 (Neb. Ct. App. 1998)). The term "Owner" describes Alexander's relationship with the LLC. It does not make him the borrower or the property owner.

The guaranties confirm the point. No one guarantees his own debt. Alexander signed each document twice because he signed once for the LLC and once for himself. His affidavit says otherwise, but the statement is a legal conclusion, and his own affidavit exhibits refute it. *Brittain* reached the same result on similar documents. There, the LLC made the note and granted the security interest, and the members signed for the LLC and guaranteed the debt individually. *Brittain*, 435 B.R. at 320, 322.

*The Debtors' Possession Does Not Change the Result*

The debtors possess the equipment and use it. A possessory interest can be property of the estate. *Steele v. Premier Capital, LLC (In re Steele)*, 297 B.R. 589, 592–93 (Bankr. E.D. Mo. 2003). Courts have held "a mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay." *In re Moore & White Co.*, 83 B.R. 277, 281 (Bankr. E.D. Pa. 1988) (quoting *In re 48th St. Steakhouse, Inc.*, 835 F.2d 427, 430 (2d Cir. 1987)). The principle covers personal property. *Moore & White*, 83 B.R. at 281; *see also In re Seven Rivers Leasing Corp.*, 669 B.R. 810, 816 (Bankr. W.D. Ark. 2025) (temporary possessory interest pending a foreclosure sale was "enough to invoke the protection of the automatic stay").

But when a debtor holds an entity's property, the debtor "should, at the very least, demonstrate some good-faith, colorable claim to or basis for possession of" the property apart from the debtor's role on behalf of the entity. *Brittain*, 435 B.R. at 323 (quoting *In re Anderson*, 2004 WL 3643696, at *7 (Bankr. D.S.C. Apr. 15, 2004)). In *Brittain*, the debtors were the sole members of an LLC. The LLC financed a truck and granted the lender a security interest. *Id.*

at 320. The debtors guaranteed the debt individually. *Id*. The debtors scheduled the truck as their own and proposed paying the debt through their Chapter 13 plan. *Id.* at 320–21. The court held that the truck was the LLC's and the debtors' possession was "as agent or representative of" the LLC, "not a right protected by the automatic stay." *Id.* at 322, 324. Their personal guaranty did not change the result. *Id.* at 324 (discussing *In re Johnson*, 429 B.R. 540, 544–45 (Bankr. D.S.C. 2010)).

The debtors hold no lease, bailment, or other agreement with the LLC. Nothing in the record gives them a right of possession apart from their control of the LLC, or of Pollmann Custom Farming, LLC, if that entity uses the equipment. They do not hold the equipment in their own right. At most, the LLC lets its owners use its equipment. Any such permission carries no more than the LLC's own right of possession, a right subject to Commercial Capital's right to take possession on default and no longer protected in the LLC's own case.

The estate takes no greater interest than the debtors held when they filed. *N.S. Garrott & Sons v. Union Planters Nat'l Bank (In re N.S. Garrott & Sons)*, 772 F.2d 462, 466 (8th Cir. 1985). As one court in this circuit put it:

> Although the debtor is still physically in possession of the property, the estate cannot hold a greater interest than that held by the debtor. Mere possession of real property, whether under applicable bankruptcy or nonbankruptcy law, cannot be converted into any sort of permanent retention absent consent of the owner.

*Seven Rivers*, 669 B.R. at 815 (citation omitted) (quoting *In re Crime Free, Inc.*, 196 B.R. 116, 119 (Bankr. E.D. Ark. 1996)).

*The Stay Is Not Extended to the LLC*

The debtors argue the usual reasons for denying a non-debtor stay protection do not apply because they possess, use, and need the collateral. The automatic stay generally does not protect non-debtors, even those with "a similar legal or factual nexus with the debtor." *Panther Mountain*, 686 F.3d at 923 (quoting *Croyden Assocs. v. Alleco, Inc.*, 969 F.2d 675, 677 (8th Cir. 1992)). It "does not, in general, apply to actions against parties who enjoy factual or legal relationships with a debtor, such as a debtor's wholly owned subsidiaries." *Id.* (citing *Kreisler v. Goldberg*, 478 F.3d 209, 213 (4th Cir. 2007)).

The stay may reach a non-debtor only in unusual circumstances, such as when the debtor is the real party defendant or the action would have an immediate adverse economic consequence for the estate. *Ritchie Capital Mgmt., L.L.C. v. Jeffries*, 653 F.3d 755, 762–63 (8th Cir. 2011). Those circumstances are rare. *Id.* at 763. None exist here. Commercial Capital seeks nothing from the debtors. It seeks the collateral of a non-debtor whose own stay has been lifted and whose trustee has abandoned the property. Recovering the collateral reduces Alexander's guaranty liability by the net proceeds.[29] Extending the stay would give the LLC's equipment more protection in this case than it received in the LLC's own case.

The debtors' reliance on their ownership of the LLC and their need for the equipment fares no better. The Eighth Circuit rejected comparable arguments in *Panther Mountain*. The debtor's alter-ego theory "f[ell] short of the type of 'rare' and unusual circumstance" warranting an extension, and its claim the action would diminish the estate's value "fail[ed] to present the unusual circumstances that might justify extension of the automatic stay." *Panther Mountain*, 686 F.3d at 922, 924. Similarly, the debtor in *Julien* was the sole shareholder of a non-debtor company, had personally guaranteed a related entity's debt, and planned to fund his plan from the company's real estate. The court still refused the extension. *Julien*, 2012 WL 314349, at *4. The same result follows here.

Chapter 11 also contains no co-debtor stay. Congress provided one in Chapters 12 and 13. 11 U.S.C. §§ 1201(a), 1301(a). It did not in Chapter 11. The debtors' argument would supply by court order what Congress left out.[30]

---

[29] The court in *Brittain* recognized a guarantor-debtor may hold a right of redemption under U.C.C. § 9-623, which, if asserted in the schedules and plan, may be an interest of the estate. 435 B.R. at 325–26 (discussing *Tidewater Fin. Co. v. Moffett (In re Moffett)*, 356 F.3d 518 (4th Cir. 2004)). The debtors did not assert a redemption right in their schedules, plan, objection, or affidavit. The court makes no determination regarding any right of redemption.

[30] The request also comes in the wrong form. A stay cannot be extended through an objection to a motion for relief. "[Section] 105 is the more appropriate source of authority for assessing the propriety of a stay." *Panther Mountain*, 686 F.3d at 926. "[A] stay issued pursuant to that section should be treated as an injunction." *Id.* The court must apply the "usual standards, procedures, and burdens of proof for injunctive relief." *Id.* at 927. An injunction requires an adversary proceeding. *See* Fed. R. Bankr. P. 7001(g). The debtors did not file one. They also did not address any injunction factors.

*Cause for Relief Is Established Under § 362(d)(1)*

Even if the debtors hold an estate interest in the equipment, relief is warranted. Section 362(d) provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1). The debtors, as the parties opposing relief, bear the burden on every issue except equity. *Id.* § 362(g).

Commercial Capital lacks adequate protection. The equipment is in the field during harvest, at risk of casualty loss and wear. No one has paid anything on it since the petition was filed. The debt exceeds the value of the contested equipment: $64,972.60 owed against $53,000 for the corn head and grain cart together, and, by the debtors' own figures, $61,000 owed against $50,000. The grain cart alone shows a modest margin, but the grain cart lease secures the LLC's other obligations, and the margin does not protect uninsured equipment from casualty loss. The debtors offered no insurance, no payments, and no replacement lien. They did not address adequate protection at all.

A protected possessory interest would not change the outcome. In *Steele*, the debtor lived in a house titled in his wife's name, and the creditor had already obtained stay relief in the wife's own bankruptcy case. *Steele*, 297 B.R. at 591. The court treated the debtor's possessory interest as property of the estate but granted relief anyway. A possessory interest in real property, "without more," is unlikely to "overcome a creditor's proof of cause to grant relief from the automatic stay." *Id.* at 593. The creditor had relief in the related case, and no one had offered adequate protection. *Id.* Both circumstances are present here. Need without adequate protection is not enough. *See Seven Rivers*, 669 B.R. at 816 (possessory interest is "not enough to prevent stay termination"); *Moore & White*, 83 B.R. at 281 (owner entitled to relief for cause unless the debtor "demonstrates some need for retaining possession" and adequately protects the owner's interests).

The debtors respond they need the equipment for fall harvest, and their plan pays the debt. Necessity for an effective reorganization is a § 362(d)(2) question. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375–76 (1988). It is not a defense against a lack of adequate protection under § 362(d)(1). The plan also cannot deliver what the debtors describe. It proposes assumption of "leases with Commercial Capital Company," but only an executory contract or unexpired lease "of the debtor" may be assumed. 11 U.S.C. § 365(a). *Cf. Moore & White*, 83 B.R. at 280 (holding a debtor with "mere possession" of a machine had "no rights under 11 U.S.C. § 365"). The agreements are the LLC's. The plan treats Commercial Capital as holding liens on the debtors' property, but its only claim in this case is an unsecured claim against Alexander on his guaranties. The plan is unconfirmed.

The timing is hard on the debtors. Fall harvest is underway. But the remedy is an agreement with Commercial Capital, not an uncompensated stay over equipment owned by someone else.

*Cause Exists for Waiver of the Stay Under Rule 4001(a)(4)*

An order granting stay relief is stayed for fourteen days after entry unless the court orders otherwise. Fed. R. Bankr. P. 4001(a)(4). The equipment remains in use, no one is paying for it, and there is no evidence it is insured. The debtors did not respond on waiver. The stay is waived.

IT IS THEREFORE ORDERED:

1. Commercial Capital Company, LLC's motion for relief from the automatic stay (Doc. #58) is granted. This order does not authorize any action on Alexander M. Pollmann's guaranties.

2. The 2001 Kuhn Knight 3050 commercial feed mixer, the 2011 Geringhoff corn head (S/N 717111), and the 2014 Orthman 1210 Chief grain cart (S/N 608502) are not property of the debtors' bankruptcy estate for purposes of 11 U.S.C. § 362(a). The automatic stay does not bar Commercial Capital Company, LLC, from exercising its rights in the equipment, including obtaining possession of it and selling or otherwise disposing of it. Alternatively, to the extent the automatic stay applies to the equipment on any basis, it is terminated under 11 U.S.C. § 362(d)(1).

3. The debtors' request for an order extending the automatic stay over the equipment (Doc. #66) is denied.

4. The fourteen-day stay under Federal Rule of Bankruptcy Procedure 4001(a)(4) is waived. This order is effective immediately.

Dated: October 19, 2026

BY THE COURT:

/s/ Brian S. Kruse
Brian S. Kruse
Chief Bankruptcy Judge